CROWSON *v.* CRAWFORD, COUNTY SUPT. EDUCATION.

Mar. 9, 1953

No. 38705        23 Adv. S. 5        63 So. 2d 231

Apr. 6, 1953        26 Adv. S. 7        63 So. 2d 792

*Kermit R. Cofer,* for appellant.

*Stone & Stone* and *Creekmore & Beacham,* for appellee.

McGEHEE, C. J.

On June 30, 1952, the appellant, Q. T. Crowson, filed a petition for a writ of mandamus to compel the defendant, Charles Crawford as County Superintendent of Education of Yalobusha County, to issue to him pay certificates for each of the months of July and August, 1951, for services alleged to have been rendered as Superintendent of the Coffeeville Special Consolidated School District, in order that the clerk of the board of supervisors could issue unto the petitioner the warrants for his salary at the sum of $291.67 per month for each of the two months in question.

In the alternative the petitioner asked that in the event the Court should hold that a contract of employment duly signed by the county superintendent of education was an essential prerequisite to the issuance of the pay certificates prayed for, then that the defendant county superintendent of education be required by a writ of mandamus to enter into such contract with the petitioner covering the two months period in question.

There was exhibited to the petition a written agreement which bears the caption "Coffeeville School Board Meeting January 15, 1951" and which agreement was duly signed by the petitioner and the five members of the board of trustees of the Coffeeville Special Consolidated School District, and which reads as follows:

"On the 15th day of January 1951, the School Board of Coffeeville Consolidated School met at the school building with all members present to consider the matter of electing Q. T. Crowson superintendent for another year with permission to make the race for county superintendent of education.

"The said Board had tentatively agreed to elect Q. T. Crowson in a meeting held at the Gym on Jan. 11 and

give him permission to make said race for county superintendent of education. All members of the Board were present except J. H. Burney. After talking the matter over with others, the Board stated there was some dissatisfaction regarding the above arrangement. With this in mind the Board agrees to continue Q. T. Crowson's contract as Superintendent of the school until Sept. 1, 1951. Q. T. Crowson asked that his resignation be effective Sept. 1, or before, 1951.''

A demurrer of the defendant to the petition was sustained by the trial court and the petition was dismissed. The order sustaining the demurrer and dismissing the suit does not recite that the petitioner declined to plead further. But he has prosecuted this appeal from the action of the trial court in sustaining the demurrer and dismissing the suit.

The petitioner alleges that for a number of years prior to January 1951 the board of trustees of the Coffeeville Special Consolidated School District had duly elected him as superintendent of the schools thereof and that during all of said years he was a duly and legally licensed teacher, and had fully discharged the duties of his employment; that the said board of trustees had verbally contracted with him to serve as superintendent of the schools for the scholastic year of 1950-1951, and that he served during said period and received the salary agreed upon in the sum of $3,500 for said year, payable in twelve equal amounts monthly beginning July 1, 1950, and ending June 30, 1951; and that on January 15, 1951, he entered into the contract with said board of trustees to serve as such superintendent for the months of July and August 1951 as hereinbefore set forth. The petitioner then alleges that he performed his duties under such employment until September 1, 1951, and was entitled to be paid by the proper authorities of the county the sum of $291.67 per month, beginning July 1, 1951, and ending September 1, 1951.

It is to be noted that the written agreement of January 15, 1951, hereinbefore quoted in full, does not specify the amount of salary that was to have been paid to the petitioner during the two months period mentioned therein, unless it may be implied that the provision to the effect that "The board agrees to continue Q. T. Crowson's contract as superintendent of the school until September 1, 1951" means that he was to receive the same salary per month that he had been receiving during the scholastic term of 1950-1951 which ended on June 30, 1951.

One of the grounds of demurrer is that the written agreement was an attempt to extend the void verbal contract of employment under which the petitioner had served during the scholastic year 1950-1951, but it would seem that this particular point is not well taken for the reason that the proceeding herein does not involve an attempt to enforce the verbal contract for that scholastic year, which had been fully executed both as to services rendered and the payment therefor, but rather seeks to enforce the written agreement as to employment for a portion of the following scholastic year of 1951-1952.

Another ground of the demurrer is that the facts alleged in the petition failed to show that a lawful meeting of the board of trustees was held for the employment of the petitioner for the two months for which he sues to compel compensation, and that the petition fails to show that there were any minutes of the board of trustees to disclose that he was legally elected as superintendent. However, if the petitioner had been duly elected superintendent according to law by the trustees, he would have been entitled to compel the board to make the proper entry on its minutes in that behalf, McGaha v. Curlee, et al., 176 Miss. 671, 169 So. 694; and would have been entitled to require the county superintendent of education to contract with him as superintendent of the schools of the said district by the filing of a petition for mandamus prior to the end of the school term.

Although the petition alleges that the petitioner was elected at a meeting of the board duly and legally held, such allegation is a mere conclusion since it is elsewhere alleged in the same paragraph of the petition that the meeting at which he was elected was held on January 15, 1951, whereas, Section 6302, Code of 1942, declares that "any election of teachers by trustees for the ensuing school term, before the annual election of trustees, shall be illegal. . . ."

Section 6422, Code 1942, provides for the election of trustees of separate school districts on the first Saturday of March, except municipal trustees whose terms shall date from January 1st.

Section 6397, Code 1942, provides that "a special consolidated school district shall have five trustees, at least three of whom shall be patrons of the school. They shall be elected in the same way as trustees of rural separate school districts. . . ."

Section 6401, Code 1942, provides that the trustees of a special consolidated school district shall be elected on the first Friday of April of the year in which the term of the trustee in that district shall expire.

Section 6302, supra, which declares that "any election of teachers by trustees for the ensuing school term, before the annual election of trustees, shall be illegal", also provides that the trustees shall meet annually, on or before the 15th day of June to select a teacher or teachers for their school, and they shall at once notify the county superintendent of their selection. In other words, it would seem that while the trustees may elect teachers as late as June 15th they can not legally do so prior to the first Saturday in March in separate school districts, under Section 6422, supra, or before the first Friday in April in a special consolidated school district, under Section 6401, supra, since Section 6302, supra, declares that "any election of teachers by trustees for the ensuing school term, before the annual election of

trustees, shall be illegal'', and the dates of first Saturday in March and first Friday in April are fixed by statute as the time for the election of trustees in separate school districts, whether municipal or rural, and for the election of trustees in a special consolidated district, respectively.

In the case of Stricklin, et al. v. Copeland, 166 Miss. 244, 146 So. 311, cited by the appellant, the written agreement whereby Copeland was elected as principal of a consolidated school for the term of 1928-1929 was signed by the trustees on March 30, subsequent to the date for the election of school trustees as fixed by Section 6422, supra, that is to say subsequent to the first Saturday of March, and the contract was executed prior to the enactment of Section 6401, supra, in the laws of 1936, fixing the date for the election of trustees of a special consolidated district as being on the first Friday in April. Therefore, the decision in the Strickland v. Copeland case, supra, is not authority for holding the written agreement valid in the instant case, which was executed on January 15, 1951, as aforesaid.

Section 6283, Code 1942, provides among other things that: ''It shall be the duty of the superintendent (county superintendent of education) to make a contract in the form prescribed by the Board of Education with every licensed teacher who has been selected by the trustees *according to law* . . .'' (Italics ours.)

Section 6398, Code 1942, defining the powers and duties of special consolidated school district trustees, had the effect of conferring upon the trustees in the instant case the authority to elect the superintendent for the schools of the Coffeeville Special Consolidated School District, but it conferred upon them no authority to make any contract with any person that would call for the expenditure of public funds other than the funds of the district. That statute specifically provides that: ''The trustees shall have authority to make such contracts

as provide for the expenditure only of funds of the district." In the case now before us the proposed contract of January 15, 1951, signed by the appellant and the trustees of the Coffeeville Special Consolidated School District, would evidently call for the expenditure of some school funds of the county derived from the state appropriation and otherwise, even if it was contemplated that the compensation sued for herein was to be paid in part from the funds of the district.

In the case of Whitehurst v. Smith, 170 Miss. 535, 155 So. 683, involving the right of a principal of a consolidated school, who had been elected principal thereof by the legal trustees but who did not have a contract with the county superintendent of education, the Court said: "It is an essential prerequisite to the issuance of a teacher's pay certificate that the teacher of a consolidated school shall have a legal contract with the superintendent of education." The Court further held in that case that "a teacher entitled to such a contract may compel it by mandamus if the action therefor is taken before the school term has expired." The petition for mandamus in that case was filed after the end of the two scholastic years for which the teacher had been elected by the trustees, whereas in the instant case the petitioner filed his petition for mandamus on June 30, 1952, the last day of the scholastic year of 1951-1952, although he had only been elected for two months of that scholastic year which began on July 1, 1951. In other words, the suit in the instant case was brought in time and could have been successfully maintained if the petitioner had been elected "according to law" as required by Section 6283, supra. That is to say, that if he had been elected subsequent to the first Friday in April as contemplated by Sections 6302 and 6401, supra, and had taught the school as alleged in his petition, he would have been entitled to compel by mandamus the entry of his contract upon the minutes of the school

trustees, if necessary, and could have required the county superintendent of education to issue a contract to him, subject to the limitations of Section 6283, supra, and the issuance of pay certificates for the compensation to which he may have been entitled. This seems to be the holding in the case of Stokes v. Newell, et al., 172 Miss. 289, 159 So. 540, and the case of Whitehurst v. Smith, supra, where the suit is brought before the end of the school term. See also Brown v. Owen, 75 Miss. 319, 23 So. 35, and McGaha v. Curlee, supra.

A further objection of the appellee to the validity of the written agreement of January 15, 1951, entered into by the appellant and the trustees is that it did not clearly specify the amount of compensation per month that he was to receive for his services during the two months in question, but as hereinbefore indicated this raises the point as to whether or not the attempted extension of the verbal contract for the scholastic year 1950-1951, which had been fully executed, was a legal extension thereof. It is unnecessary that we decide this issue ▇▇ ▇ since the two months period of July and August 1951 during which he was to render the services attempted to be contracted for, was a part of the next scholastic year, and was invalid on the ground that the trustees were without authority to make a legal contract for the next scholastic year, or any part thereof, until after the date fixed by law for the election of the trustees. We base our decision of affirmance of the action of the trial court in sustaining the demurrer on that ground alone.

But since the order sustaining the demurrer and dismissing the petition for mandamus does not recite that the petitioner had declined to plead further before his petition had been dismissed, and the case is here on the demurrer to the original petition, we merely affirm and remand the cause.

Affirmed and remanded.

*Lee, Kyle, Ethridge* and *Lotterhos, JJ.,* concur.

ON SUGGESTION OF ERROR

LEE, J.

Response is made only to that part of the suggestion of error, filed in this cause, wherein it is suggested that the original opinion is erroneous because it held that the purported contract for the two months' period of July and August, 1951, being a part of the next scholastic year, "was invalid on the ground that the trustees were without authority to make a legal contract for the next scholastic year, or any part thereof, until after the date fixed by law for the election of the trustees . . ."

It is now contended, for the first time, that the trustees of this school district are not elected by the qualified electors, but are appointed by the county superintendent of education, in accordance with the provisions of Sec. 6368, Code of 1942; that the trustee for appointment in 1951 had already been appointed prior to the action by the board of trustees on January 15, 1951; that the board was lawfully constituted at that time; and that Crowson's selection was not illegal.

At the time of the consideration of this cause by the trial court on demurrer, the pleadings did not disclose any facts which would take the case out from under the provisions of Secs. 6397, 6422(b), 6302, and 6401, Code of 1942. That question not having been raised in the court below, no discussion thereof will be indulged here unless or until it is properly before this Court.

Suggestion of error overruled.

*McGehee, C. J.,* and *Kyle, Ethridge,* and *Lotterhos, JJ.,* concur.